

EOD
06/17/2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| WILLIAM J. LEAK § | | Case No. 09-43363 |
| and KANDY BEACHEM LEAK, § | | Chapter 7 |
| Debtors § | | |

| | | |
|---|---|---|
| IN RE: § | | |
| WILLIAM M. SORRELS, III § | | Case No. 09-43896 |
| and KIM BEACHAM SORRELS, § | | Chapter 7 |
| Debtors § | | |

| | | |
|---|---|---|
| T2 CONSTRUCTION, LLC § | | |
| Plaintiff, § | | |
| vs. § | | ADVERSARY NO. 10-04016 |
| WILLIAM J. LEAK, § | | (Consolidated with 10-04018) |
| Defendant. § | | |

| | | |
|---|---|---|
| T2 CONSTRUCTION, LLC § | | |
| Plaintiff, § | | |
| vs. § | | ADVERSARY NO. 10-04018 |
| WILLIAM M. SORRELS, III § | | (Consolidated with 10-04016) |
| Defendant. § | | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the Court following the consolidated trial of the complaints filed by T2 Construction, LLC ("T2") against William J. Leak and William M. Sorrells (collectively, the "Debtors"), asking that this Court liquidate its debt and then except it from the discharge in the Debtors' respective bankruptcy cases in accordance with 11 U.S.C. § 523(a)(2)(A) and (B). The Court has core jurisdiction over the parties and the issues raised in the complaint in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(I). The Court's findings of fact and conclusions of law follow.

## I. FINDINGS OF FACT

1. T2 first sued the Debtors in state court. After the Debtors sought relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, T2 initiated adversary proceedings in connection with each of their bankruptcy cases. The Court consolidated the two related adversary proceedings and tried them together on January 20, 2011.

2. T2's claim against the Debtors arises from their guaranty of a loan agreement. In particular, on January 22, 2009, T2 entered into a non-revolving multiple advance note (the "Note") with New Lineage Custom Homes, LLC ("New Lineage"). T2 thereby agreed to lend up to $490,000 to New Lineage for the construction of a home for one of the Debtors, William Sorrells, in Collin County, Texas. Both Debtors guaranteed the Note.

3. In connection with the Note, the Debtors signed an Omnibus Closing Certificate & Affidavit prepared by T2's attorneys. The Debtors represented in the document that they and New Lineage were not insolvent.

4. Tommy Thompson owns T2.

5. The Debtors are the only members of New Lineage.

6. New Lineage was formed in 2002 to build and sell homes. New Lineage had built approximately 250 homes as of January 2009, including a home for Mr. Thompson's daughter. Mr. Thompson dealt with two employees of New Lineage, Steve Mitchell and Jonathan Price, in connection with the purchase of a lot from New Lineage and the construction of his daughter's home.

7. In October 2008, Mr. Price approached Mr. Thompson about financing New Lineage's construction of a home for Mr. Sorrells.[1] Mr. Price provided Mr. Thompson with information about the lot, the house New Lineage planned to construct, and a construction budget. He and Mr. Mitchell also provided Mr. Thompson with an inventory of New Lineage's properties dated September 30, 2008, as well as a work in process report dated December 31, 2008.

8. The documents provided to Mr. Thompson showed that New Lineage was insolvent as of December 2008. Nonetheless, Mr. Thompson executed the Note for T2.

9. The Debtors met Mr. Thompson for the first time when they executed the loan documents.

10. T2 disbursed approximately $138,000 to New Lineage in connection with the Note. T2 used a portion of the funds to purchase a lot and begin construction of the home for Mr. Sorrells.

11. The value of the property purchased by New Lineage, on which T2 has a lien, is approximately $80,000. T2 had not foreclosed upon the property as of trial.[2]

12. The Debtors testified that financial condition of New Lineage swiftly declined during January and February 2009. The deterioration was not due to any mismanagement but to turmoil in the real estate and financial markets.

13. In February 2009, T2 failed to make the first interest payment due under the Note. The Debtors testified that this was a strategic default. According to their

---

[1] Mr. Thompson testified that he did not know at the time that the home was to be constructed for Mr. Sorrells.

[2] Mr. Thompson testified that he has purchased several lots formerly owned by New Lineage after another lender initiated foreclosure proceedings in or around September 2009.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW, Page 3*

testimony, they believed Mr. Price was negotiating with Mr. Thompson about providing financing to New Lineage.

14. The Debtors met with Mr. Thompson in April 2009. The real estate and financial markets were still in turmoil at that time, and New Lineage's financial condition had continued to worsen. After the meeting, Mr. Thompson sent a notice of New Lineage's default under the Note and demand for payment to the Debtors.

## II. CONCLUSIONS OF LAW

1. Armed with this understanding of the facts, let us turn to the legal issues raised by T2. T2 seeks a money judgment against the Debtors for (i) the balance of the monies owing to T2 -- *i.e.,* the principal amount of $138,000 together with interest, fees and expenses, and (ii) attorneys' fees. Moreover, T2 seeks a determination that the money judgment is not dischargeable in bankruptcy under §§ 523(a)(2)(A) or (B) of the Bankruptcy Code.

2. At trial, the Debtors did not dispute that New Lineage defaulted under the Note or that they have not made any payments to T2 pursuant to their guaranties. The parties stipulated that the indebtedness, with default interest, now exceeds $170,000. The issue for trial was dischargeability.

3. As a predicate legal matter, the Court notes that exceptions to discharge are construed in favor of the debtor. *Fezler v. Davis (In re Davis),* 194 F.3d 570 (5th Cir. 1999). The creditor bears the burden of proof and must establish each of the required elements of a claim under § 523(a) by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279 (1991); *In re Acosta,* 406 F.3d 367 (5th Cir. 2005).

4. For a debt to be nondischargeable under § 523(a)(2)(A), a creditor must show—

(i) the debtor made a representation;

(ii) the debtor knew the representation was false;

(iii) the representation was made with the intent to deceive the creditor;

(iv) the creditor actually and justifiably relied on the representation; and

(v) the creditor sustained a loss as a proximate result of its reliance.

*General Electric Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 372 (5th Cir. 2005).

5. Similarly, § 523(a)(2)(B) makes debts nondischargeable to the extent the money, property, services, or an extension, renewal, or refinancing of credit are obtained by the use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. §§ 523(a)(2)(B).

6. Here, T2 asserted in the pretrial order that the Debtors deliberately deceived Mr. Thompsos by misrepresenting that they intended to use the proceeds of the Note to build a home. According to T2, the Debtors intended to use the funds to pay New Lineage's obligations to other lenders. The preponderance of the evidence at trial, however, established that that the Debtors intended to use the proceeds of the Note to

build a home for Mr. Sorrells and, in fact, started the construction process at or around the time T2 made the initial disbursement.

7.     In addition, T2 asserts that the Debtors misrepresented in the Omnibus Closing Certificate & Affidavit that they and New Lineage were good credit risks.  T2 asserts that the Debtors made this misrepresentation in order to deceive T2.  T2 asserts that it relied on the Debtors' misrepresentations by entering into the Note and accepting their guarantees and, therefore, the Debtors' obligations on their guarantees are nondischargeable under § 523(a)(2)(A).

8.     T2 has failed to establish by a preponderance of the evidence that it justifiably relied on the representations that the Debtors and New Lineage were in good financial condition in the Omnibus Closing Certificate & Affidavit.  Mr. Thompson, the owner of T2, had in his possession contradictory information showing New Lineage to be insolvent.  A person may not justifiably rely on a representation if "there are 'red flags' indicating such reliance is unwarranted."  *In re Mercer,* 246 F.3d 391, 418 (5th Cir. 2001).

9.     Alternatively, T2 asserts that the Debtors' guaranty obligations are nondischargeable under § 523(a)(2)(B) because they provided T2 with materially false valuations of New Lineage's property in order to induce T2 to extend credit.  Mr. Thompson testified that the valuations were materially false, because New Lineage's properties subsequently sold for much less than the values described in the documents provided to Mr. Thompson.  In light of the undisputed depression in real estate values during the relevant period, however, Mr. Thompson's testimony regarding the eventual

sales prices for New Lineage's property is insufficient to show a materially false statement within § 523(a)(2)(B).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that T2 has not met its burden of proof to show that it justifiably relied on misstatements made by the Debtors in extending credit to New Lineage or that the Debtors obtained credit from T2 by making materially false statements in writing regarding New Lineage's financial condition. The Court will enter a separate judgment consistent with these findings and conclusions.

Signed on 6/17/2011

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE